**CHILTON CORPORATION, d/b/a Credit Bureau Services, Appellant,**

v.

**Bobby G. MOORE, Appellee.**

No. 17489.

Court of Civil Appeals of Texas, Forth Worth.

March 29, 1974.

Rehearing Denied May 3, 1974.

Carrington, Coleman, Sloman, Johnson & Blumenthal, James A. Ellis, Jr., and Corbet F. Bryant, Jr., Dallas, for appellant.

Cribbs, McFarland, Holman & Holloway, and Jesse A. Holloway, Arlington, for appellee.

## OPINION

BREWSTER, Justice.

This appeal is by the defendant Chilton Corporation, from an order overruling its plea of privilege whereby it sought to have the case transferred to Dallas County where its principal office was located.

The plaintiff, Bobby G. Moore, had filed this case in Tarrant County. He sought to recover damages against defendant, Chilton Corporation, allegedly caused by that defendant negligently gathering and disseminating a false credit report on him.

Moore's contention on the appeal is that he has the right to keep this case in Tarrant County under Subdivision 23, Art. 1995, Vernon's Ann.C.S. No other subdivision is involved.

The particular part of Subdivision 23 that is involved here provides in part the following: "Suits against a private corporation . . . may be brought . . . in the county in which the plaintiff resided at the time the cause of action or part thereof arose, provided such corporation . . . has an agency or representative in such county; . . . ."

At the hearing it was undisputed that the plaintiff resided in Tarrant County at all times involved here; that defendant is a private corporation and that defendant has an agency or representative in Tarrant County.

■ In order to keep venue of this case in Tarrant County under the above quoted part of Subdivision 23, Art. 1995, it was necessary that the plaintiff, Moore, at the venue hearing prove by a preponderance of the evidence (1) all the elements of the cause of action that he had alleged against the defendant, (2) that a part of the cause of action arose while plaintiff was a resident of the county of suit, (3) that defendant is a private corporation, and (4) that defendant has an agency or representative in the county of suit. See Cline v. Southwest Wheel & Mfg. Company, 390 S.W.2d 297 (Amarillo Tex.Civ.App., 1965, no writ hist.) (cases therein cited), and 60 Tex. Jur.2d 64, Venue, § 206, note 14.

The plaintiff contends that the basis of his action is the Federal Statutes appearing in 15 U.S.C.A., § 1681 through § 1681s inclusive, which statutes deal with and regulate in part Credit Reporting Agencies. Section 1681e, subd. (b), created a duty on defendant, whenever it prepared a consumer's report, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

Section 1681o provides: "Any consumer reporting agency or user of information which is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is

liable to that consumer in an amount equal to the sum of—(1) any actual damages sustained by the consumer as a result of the failure; (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court."

In plaintiff's petition he alleged that he had applied for credit or loans at several different places including the First National Bank of Fort Worth, and that defendant had furnished to these people bad credit reports on plaintiff that resulted in them refusing to extend credit to him to his damage. He alleged that defendant was guilty of several acts of negligence that resulted in damage to him.

From this it is apparent that essential elements of plaintiff's cause of action that he had to prove were that defendant committed an act of negligence that proximately caused damage to him.

■ Defendant's first and second points of error on this appeal were that the trial court erred in overruling his plea of privilege because (1) plaintiff presented no evidence to prove that defendant committed any negligent act, and (2) the evidence was insufficient to show that defendant committed a negligent act.

We overrule these two points.

The Federal Statute referred to placed a duty on the defendant, a consumer reporting agency, since it prepared and disseminated a credit report on plaintiff, to "follow reasonable procedures to assure maximum possible accuracy of the information" in the report about plaintiff.

Plaintiff proved that defendant put out a bad credit report on him. They gave him a very bad credit rating. They contended that Sears Roebuck Company advised them that Sears Roebuck Company rated plaintiff's credit as I–9, which was very bad. He also proved that this credit information was false and that all involved corrected it later.

Plaintiff proved that the credit information on him was gathered by and disseminated in Tarrant County by defendant's office that is located in Arlington, Tarrant County, Texas. Its office manager testified that defendant got a rush call from one of its members for credit information on plaintiff. The credit information was to be furnished the member within 8 hours. Defendant's procedure in such a case was for its employee to telephone to Sears Roebuck & Company, give them the plaintiff's name, his wife's name, their address, and ask them to give defendant the credit information they had on their ledger about plaintiff. A Sears Roebuck employee would then give to defendant's employee, over the telephone, the information their ledger allegedly showed concerning plaintiff's credit rating. Defendant would put this information in their file on plaintiff. Defendant's office manager testified that there was one other way that defendant's employees sometimes handled the gathering of credit information from Sears Roebuck. Defendant would prepare a trade slip giving the name of the person being inquired about, such person's wife's name, and their address and this trade slip would be turned over to defendant's courier who would hand-deliver this and other similar trade slips to Sears Roebuck and would go back to Sears Roebuck the next day to get the credit information Sears furnished on each person inquired about. He testified that the credit information involved here that they got from Sears on plaintiff was gotten from them in one of the two above described ways. The Sears report was the only bad credit information defendant received on plaintiff. After receiving credit information on plaintiff in one of the two ways referred to above, the defendant then prepared a report wherein they showed that plaintiff's credit rating was very bad and disseminated it to the persons to whom plaintiff had applied for credit.

Defendant's office manager testified that defendant took no further steps whatever to check or otherwise determine that the bad credit information they received from Sears Roebuck on plaintiff was accurate or that it actually applied to plaintiff. Defendant did not even keep records to show which of its employees handled the matter of gathering the incorrect information on plaintiff.

One ground of negligence alleged by plaintiff was in effect that defendant had violated the duty that is imposed on it by 15 U.S.C.A., § 1681e, subd.(b), to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." The 4th ground of negligence alleged by plaintiff alleges in substance the violation of that duty.

We hold that defendant's contentions that there was no evidence and insufficient evidence to raise the negligence issue was without merit. The evidence that we have referred to above was sufficient to raise the issue as to whether or not defendant was guilty of negligence as charged in violating the duty imposed on it by 15 U.S.C. A., § 1681e, subd.(b).

In defendant's third and fourth points of error it contends that plaintiff, Moore, offered no evidence to show that he sustained damages that were reasonably foreseeable by plaintiff and that the evidence plaintiff offered was insufficient to show that he sustained damages caused by defendant's negligence.

We overrule these points.

The law is that at a venue hearing it is not necessary to establish the amount of damages claimed. It is only necessary at such a hearing to show that the plaintiff did sustain some damage by virtue of defendant's negligence. Gulf Oil Corporation v. Martindale, 381 S.W.2d 141 (Beaumont Tex.Civ.App., 1964, no writ hist.); Hanslik v. Nickels Ginning Company, 496 S. W.2d 788 (Amarillo Tex.Civ.App., 1973, no writ hist.); and Hawkins v. Schroeter, 212 S.W.2d 843 (San Antonio Tex.Civ.App., 1948, no writ hist.). This Hawkins case was a suit for damages for personal injuries based on negligence. The following is from the opinion in the Hawkins case at page 846:

"In Black's Law Dictionary (3d Ed.) the verb 'injure' is thus defined: 'To violate the legal right of another or inflict an actionable wrong (p. 965).' The noun 'injury' is defined as 'any wrong or damage done to another, either in his person, rights, reputation or property.'

"It is conceded that the amount of pecuniary damages sustained as the result of the injury, the extent of the injury, in other words, is not a venue fact, nor an element of a venue fact. Therefore, all a plaintiff needs to show in order to maintain venue is that a legal right of his has been violated as a result of a particular class or kind of wrongful act."

The evidence in this case showed that defendant sent to the First National Bank of Fort Worth a credit report on plaintiff showing the unfavorable credit information at a time when plaintiff had pending an application for an $8,000.00 loan from that bank. The bank employee had led plaintiff to believe that this loan would probably be granted and advised him that they would tell him for sure the next day. The plaintiff at the time had a $2,000.00 line of credit at the bank. He had also a $5,000.00 C. D. from another bank that he was going to put up as collateral, so actually what he was seeking was to be extended by the bank an unsecured credit for an additional $1,000.00. When he returned to the bank he was advised that the loan had been turned down. In connection with the loan he had also furnished the bank a financial statement showing he had a net worth of over $50,000.00.

█ It is true that there was no direct evidence to the effect that the loan was turned down because of the bad credit re-

port on plaintiff that defendant had furnished to the bank. However, the facts and circumstances proved would strongly lead one to believe that the receipt of defendant's credit report on plaintiff was the reason why the bank refused to make the loan to plaintiff that he had applied for. The court could consider circumstantial evidence in passing on the question. See Nunneley v. Weiler, 244 S.W.2d 707 (Fort Worth Tex.Civ.App., 1951, no writ hist.).

We hold that the evidence referred to was sufficient to uphold the trial court's implied finding that the plaintiff did sustain injury or damage as a proximate result of the defendant's negligence.

Affirmed.